And so we'll turn to the day calendar. We'll hear Kim v. Hartford Insurance. Good morning. My name is Hold on one second. The entire courtroom in the back is emptying virtually, so just hold on a second. Don't take it personally. Okay. Whenever you're ready. My name is Robert Bach. I represent the Plaintiff Appellant Mari Kim. The policy in this case defines mental illness as a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders published by Which this is. Which this is. You think it shouldn't be, I gather, but it is. Come again? You think it ought not to be there, but it in fact is. It is there, yes. The objection is to the DSM, the Diagnostic Manual. Our objection is that We have either the power or the ability to change that? No, but the argument is that they have a fiduciary responsibility to see that the standards that they use in adjudicating the claims in the plan are scientifically valid. This is a standard that's specifically required by the agreement. I understand that, but And their first obligation is to execute the agreement. I'm hard-pressed to understand how they could substitute a different standard when that's the contracted standard. Well, if the contracted standard is wrong, for example, if that plan said two and two is equal to five, you wouldn't follow the plan using that analysis. You would have to correct that, is my position. And what authority do you have for that? Because usually, whether it's plans or statutes or whatever, when there's a definition or a standard given, that is what we apply. We don't entertain arguments about whether it's right or wrong. It's what the parties agreed to. But if the parties agreed to something So what's the authority that would allow us to do what or would require the fiduciary to do what you're saying it was obliged to do? I think my position is that the trustees, the fiduciaries of the plan, have an obligation under ERISA to be fair, honest, loyal to the participants of the plan. And if they use a standard that is knowledgeable, that they know is incorrect or is arguably incorrect, they have a duty to review it. In the Tibble case, there was a question of the Supreme Court decision came down in 2015. There was an argument that the products that they were offering to the participants were expensive or too expensive and that there were other products available to the participants that they had access to. Investment management issue. It's different from substituting a different standard from the standard provided in the plan. My response is that in Tibble, the court said that there was a viable cause of action and then referred the actual factual issue if in fact there was additional opportunities. DSM remains broadly accepted, right? And even our court, just a few years ago, held that it is an objective authority. Well, that's the problem. It's not an objective authority. According to whom? Isn't there a genuine disagreement over the continued validity of the DSM in this respect? There is. If there is a genuine disagreement, how can you say that it has to be your way? Well, what I'm saying, I'm not arguing for substitution. What I'm arguing is that the plan has an obligation to review that concept. For example, if I as a person went to the plan and said the DSM-4 is not very good, it needs to be changed. That's one thing. It doesn't help you unless it is changed. Well, one step at a time. I think the next piece to my argument is that when you have very highly qualified individuals, so for example, Thomas Inslin, who was the NIMH saying that there's no scientific validity to the DSM packages or volumes, that's different. That's a different person saying, a person of knowledge, a person who is in charge of funding all sorts of mental health research projects. When the DSM-5 was published, he said, we're not going to use that anymore if the DSM-5 is involved because there's no scientific validity. And what they mean is that the science of the DSM-5 is based on consensus of practitioners. His argument is that there is no scientific validation. So for example, you established a hypothesis, you test it, you publish it, and then other people come back and they review it to see if the fact is duplicate process. The other argument that he makes is that the system that they have established is incorrect. It's based on symptoms. And he is saying that is an archaic way of looking at it. The distinction made by the DSM saying that their system of this mind-body distinction is outdated and really is archaic. And that you need to take into consideration certain different concepts. Our concept is, our feeling, our argument is that, and it's put in the papers, and in the appendix particularly, because I would refer you to the appendix to look at some of the articles of criticism of the DSM. Established people have made this. They're not just somebody coming off the street. You're asking this court to hold that the definition in the DSM is no longer valid scientifically? Well, what I'm asking for them to do is since there are serious allegations that, by serious people, credentialed people who did not, who say this product is not good, that there is a basis for, we've met a threshold of coming forward for the plan to meet its fiduciary obligation to review the argument made that the DSM-IV should not be the standard. And what happens is that, obviously, there's a two-tier benefit system. If you have a mental disease, the, it's a 24-month limitation. And as the case is cited in Hartford's brief, there are all sorts of situations where that definition is so very broad that, for all practical purposes, if somebody had a cold, pneumonia, cancer, that's a 24-month limitation. Any of the normal common diseases, and you can see that in the appendix. Over your time, by the way, do you want to use your rebuttal time now, or do you want to save it? I think I'll wait. Thank you. All right. We'll hear from the other side. Thank you, Your Honors. May it please the Court, Patrick Bagos for Apelli Hartford Life Insurance Company. The employer in this case, the School of Visual Arts, didn't need to call. And under the rules of ERISA and under the statute, it had the authority to determine what benefits to provide and what limitations to provide. The school had every right to limit benefits payable for bipolar disorder or any other mental illness. And it's the obligation of Hartford Life Insurance Company, as a claim fiduciary, to carry out the language of the plan. Mr. Bach mentions frequently that there's a fiduciary obligation, in his view, to review the terms of the plan. But there is no such fiduciary obligation. A person is a fiduciary to the extent they exercise fiduciary powers in connection with an ERISA plan. And it's well established that plan formation, plan amendment, is a sponsor, a settler function. It's not a fiduciary function. In order to try to argue that there's some fiduciary obligation for a claim fiduciary to review the terms of the plan, the appellant relies on the Tibble case and the Dudenhofer case. But those deal with a duty of prudence, which is specifically written into ERISA as one of the duties that a fiduciary must carry out. There is no analog duty by a claim fiduciary to review the terms of the plan. I would say the Fuller case that this Court decided about 10 years ago, I think, as Judge Corman found below, applies even more strongly here. In Fuller, the definition of mental illness was more vague. It was, I think, mental and emotional disorder. And the Court found that, this Court found that referring to the DSM was reasonable because it's an objective catalog of mental disorders. Here, the plan specifically defined mental illness by reference to the current DSM. So as Judge Corman found, Fuller applies even more strongly here. How do you respond to counsel's hypothetical that if the plan said 2 plus 2 equals 5, the fiduciary would be obliged to correct it? I think, actually, if the plan said 2 plus 2 equals 5, in most cases, the fiduciary would be obligated to treat 2 plus 2 as equaling 5. I can't really imagine that situation taking place, but the Supreme Court has said again and again and again that the plan is the centerpiece of ERISA, that the Court has no authority to change the plan, that the Court's obligation is to enforce the plan. Same for fiduciaries. The Dudenhofer case, which is something of an exception, that's the only case I'm aware of where the Court suggested that the language of the plan is somehow subordinate. And there, it dealt with a very specific issue. It was an employee stock ownership plan, which, under ERISA as it was enacted, couldn't exist because ERISA imposes a fiduciary duty of diversification on investment managers. So you couldn't have an employee stock ownership plan. Congress passed a law which encouraged and allowed employee stock ownership plans, and so the question there was, where Congress eliminated the duty of diversification to allow employee stock ownership plans, did that also modify the duty of prudence, the prudent person standard? Most of the circuit said that it did, and the Supreme Court said that it didn't, and that the plan cannot be drafted to tell a fiduciary that you don't have to carry out one of the duties that ERISA specifically imposes on you. But here, ERISA doesn't impose on a claim fiduciary like Hartford the duty to review the terms of the plan. It's quite the opposite. It imposes on Hartford the duty to carry out the terms of the plan. I would just leave the Court with, there's a decision called Doe v. Unum Life by the Southern District of New York from a couple of years ago, which had this exact issue come up, and the Court held, quote, plaintiff's mental conditions may have physical components or biological bases. The plan, however, is concerned only with whether a condition is classified, whether those conditions have biological bases is immaterial. The same logic applies here. Unless the panel has any questions for me, I'll tender the rest of my time. Thank you. We'll hear the rebuttal. With respect to the challenges to the DSM, I would just call your attention to the appendix. There are articles starting on page 31 through 57. It will give you a range of the commentary and the problems with that document and that whole package. The plan says, the plan has granted the insurance company, Hartford, full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and positions of the plan. What Mr. Bago says is that as long as we stick in the confines of that, we don't have an obligation. And I submit that's not so. Although the plan is, in fact, supposed to be the keystone of ERISA, there are exceptions when you have to go outside the plan. And that's what you go outside the plan because it's an effective remedy not under the plan provisions, but under the appropriate equitable relief provisions. So notwithstanding the terms of the plan, corrections are made by the court. Let's take this as a trust example. If somebody presented a trust to you and said, I want you to, you're my trustee, I want you to invest in Kodak and I want you to invest in Xerox and after I die, I want you to maintain that investment. The plan is very clear. Yet the courts will change that on their side, pray, because there's a loss to the beneficiaries of the plan, there's a waste of the trust, and it doesn't make economic sense if you're trying to protect beneficiaries. If you have a TB hospital, but TB is no longer there, the courts have said, well, we'll find some other ileomancenary type of beneficiary or program so that the money is not wasted or sits there. So the courts do have authority under judicial equity to make adjustments. The city of LA v. Manhart was a gender discrimination. Women were paying more contributions than men. The Supreme Court said you can't do that and made the plan change it. The fiduciary standard, what Mr. Bagos is arguing is that if I stay within the confines of my plan and I don't look to the right or left, even though something's wrong over outside or using the very tools that I'm going to do to adjudicate a claim, he uses, his Hartford uses the DSM-IV to adjudicate a claim. If that standard is incorrect, it would seem to me incumbent on that fiduciary to go, at least at a minimum, go to the plan sponsor or to the individuals who had the authority to amend the plan to say, we think we have a problem here. Or somebody's being raised and backed up by substantially credentialed individuals, we want to take a look at that and see, in fact, if there is something there. What they are doing is then sticking their heads in the sand because we don't see it and therefore we'll follow the plan. We don't care if we have to walk off a bridge and it tells us to do that. That's what they're suggesting. Thank you. We have your argument. Well-reserved decision. Thank you.